JOHN C. GADDIS & CO. *v.* T. T. RAMSEY.

**Partnership Property—Receiver's Sale—Sale Under Attachment Judgment, Form of.**

Where a receiver is appointed and sells partnership property, bringing the money into court, such sale is valid.

**Sale Under Attachment.**

> Where there has been a sale of partnership property by receiver, the sale of the same property under an attachment against one of the partners is invalid.

**Judgment.**

> In a suit by the purchaser of partnership property at receiver's sale, against the purchaser at an attachment sale against one of the partners, a judgment is proper giving the plaintiff the property, if it may be found, and if not for its value.

### APPEAL FROM CAMPBELL CIRCUIT COURT.

### September 23, 1874.

OPINION BY JUDGE COFER:

On August 29, 1870, J. G. Kearns filed his petition in equity in the Harrison Circuit Court against Robert Powell and Johnson & Hardy, alleging in substance that he and Powell had theretofore been in co-partnership in the lumber business at Cynthiana; that they owned a lumber yard at that place and other property which was in the possession of Powell, and a steam circular sawmill situated in Grant county; that he, Kearns, on August 20, had entered into a contract which read as follows:

1. "J. G. Kearns is to take the business, including mill, lumber yard at Cynthiana, all stock, etc., and all debts due the partnership, and is to complete and carry out all contracts made by the firm, and is to become responsible for and settle all debts due by the firm, so that Robert Powell is to be entirely relieved of all liability on account of said partnership.

2. "Said Kearns is to give security acceptable to the firm creditors, so that they will release Powell from responsibility.

3. "The above stipulations are to be carried out and fulfilled within two weeks from this date; and until they are carried out and fulfilled neither party shall sell or dispose of any of the partnership property."

Kearns also alleged that he was ready and willing to execute the agreement, and had offered to give security to the creditors as he had agreed to do; but that Johnson and Hardy had refused to release Powell, on the ground that they held other notes on the firm amounting to about $2,000; that these notes were for debts contracted by Powell for his own account before the formation of the partnership, and for which he had given the firm notes. He was still ready and willing to carry out the agreement and pay the amount for which the

firm was liable, but not the amount which Powell owed individually. He prayed that Johnson and Hardy might be forced to surrender the firm notes executed by Powell for his own indebtedness, and that the partnership affairs might be settled.

On September 5, Powell filed his answer and cross-petition against Kearns in the clerk's office, and on September 7 gave Kearns notice thereof, and also notice of an application to the judge of the circuit court at Chambers for an injunction enjoining Kearns from removing or selling the partnership property.

It was alleged in the answer and cross-petition that the debts for which the notes to Johnson & Hardy were executed had been assumed by the firm of Powell & Kearns; that Kearns, in violation of the agreement, had taken possession of the firm effects at Cynthiana, and had sold a part, and threatened to dispose of the whole for his own use to the exclusion of Powell, and in fraud of the creditors of the firm, to prevent which he prayed for an injunction and the appointment of a receiver to take charge of the partnership property and to collect the debts due the firm, and for a settlement of the partnership.

On September 19, the appellants, Gaddis & Co., claiming to be creditors of Powell and Kearns, brought an action in the Campbell circuit court, seeking a judgment against Powell and Kearns and Muggridge, who, it was alleged, was also a member of the firm, and sued out an order of attachment which they placed in the hands of the sheriff of Grant county, who returned it with the following endorsement: "Executed September 22, 1870, by handing J. G. Kearns a copy of this order, and levying on J. G. Kearns' steam circular saw mill, consisting of boiler engine, saw, bands and all the fixtures thereto belonging, taken and levied upon as the property of defendant, J. G. Kearns, in satisfaction of this attachment."

On November 11, 1870, an order was made in the action in the Pendleton Circuit Court, referring it to the master; and it was "further adjudged, by consent, that Perrin, as commissioner and receiver, take possession of all the partnership property in this county (Harrison) and Grant county * * * and sell the same at public auction." In obedience to this order the receiver on December 1, 1870, sold the saw mill, when the appellee, T. T. Ramsey, became the purchaser. The sale was reported and confirmed, and appellee took possession of the mill.

The suit in the Campbell Circuit Court progressed until November 28, 1871, when there was a trial and verdict for the appellees

against Powell, Kearns and Muggridge; but the court, of its own motion, set aside the verdict as to Powell and rendered judgment for the amount of the verdict against the other defendants, sustained the attachment, and adjudged a sale of the attached property. Under this order the sheriff of Grant county sold the steam saw mill and appellants became the purchasers. The sale was reported, and on motion of appellants it was quashed, and the sheriff of Grant county was ordered to repossess himself of the mill, and to sell it under the former order, which he did, and the appellant, on March 21, 1872, again became the purchaser.

It appears that the sheriff of Grant county never took possession or control of the mill, under the order of attachment, until after the first sale made by him was quashed, which was on February 15, 1872, but that it had been in possession of appellee from the date of his purchase at the commissioner's sale, under the judgment in the case of *Kearns v. Powell*, in Harrison.

On March 7, 1872, before the second sale of the mill by the sheriff of Grant county was reported to the court, the appellee filed in the office of the clerk of the Campbell Circuit Court his petition under Sec. 257, Civil Code, in which he sets up claim to the mill and fixtures, under his purchase at the receiver's sale under the consent order in the Harrison Circuit Court, and asked that his claim be investigated, which was done; and the law and facts having been submitted to the court, judgment was rendered in favor of the appellee for the mill, if to be had, and if not, then for $2,000, its adjudged value, and from that judgment Gaddis & Co. have appealed.

Various objections are urged against the judgment, only a part of which need be particularly noticed. It is insisted first, that the appellee never was properly in court, but we think otherwise. The filing of his petition in the clerk's office neither made him a party to the action, nor entitled him to have his claim investigated; but it appears that "on motion of T. T. Ramsey, claimant of the attached property herein, it was ordered that his said claim be investigated before the court," and the parties waived a jury, and submitted the law and facts to the court. This order, though not formal, was sufficient to give the court jurisdiction to hear and decide upon the validity of appellee's claim.

It is next insisted that as the sale had been made, and appellants had purchased the mill before appellee's petition was presented, it was then too late for the court to investigate his claim. Sec. 527, Civil Code, provides that "any person may, before the sale of at-

tached property, or before the payment to the plaintiff of the proceeds thereof, or any attached debt, present his petition, verified by oath, to the court, disputing the validity of the attachment, or stating a claim to the property, or an interest in, or lien on it under any other attachment, or otherwise, and setting forth the facts on which his claim is founded, and his claim shall be investigated." Under this provision it is not too late, as long as the fund arising from the sale is under the control of the court, for a claimant to present his petition; and until the sale of property has been reported, and confirmed, the property itself is still subject to the order of the court, and there can be no doubt of the power of the court to order it to be delivered to a claimant who manifests his title to it, even where it has been purchased by a stranger to the proceedings.

The appellants were only preferred bidders for the mill, and had no absolute claim to it in virtue of the purchase, and cannot defeat the claim of appellee on that ground.

It is next argued, that as appellants' attachment was levied before the order was made in the case in the Harrison Circuit Court referring the case to the master for settlement and to sell the property, the lien created by the levy overreaches the *lis pendens* in that case, which, it is claimed, was created only by the order of reference and sale. The decision of this question would depend upon the question whether the petition of one partner, and the answer of the other, both seeking the aid of the court to settle the partnership, and the appointment of a receiver to take charge of the partnership property, would create a *lis pendens* as to such property. The pleadings certainly amounted to a consent on the part of both members of the firm that the court should assume control of the property; it was their property and they had a right to come into court to have it applied to the payment of firm debts; and they certainly had that right so far as appellants were concerned, for they seem to have known and sanctioned what Powell did, at least at the time of his application to the judge for an injunction. But, however this may be, the appellants have failed to show such a right in themselves to the mill as will enable them to defeat the claim of the appellee.

The mill was the property of the firm of Powell and Kearns, for the executory agreement of August 20, never having been carried out, by a compliance with its terms by Kearns, the title to the mill remained in the firm. As partnership property it was subject first to the payment of firm debts; and the title of the firm could only be divested by a sale by the firm, or by a judgment for firm debts,

and in order to divest the title by a judgment for its sale to pay such debts, such proceedings must be had as will bind all the members of the firm.

The appellants have not obtained a judgment against Powell, and therefore never could have acquired, under the judgment, the title of the firm to the mill. The judgment being against Kearns alone, the only interest the appellants could have acquired was whatever interest Kearns had in the mill, and as his individual interest of firm debts; and he would only have what might remain after firm creditors were paid, and as it appears that the firm assets will not pay the firm debts, it results that appellants acquired no title to the mill, and that its seizure at their instance and its detention by them were wrongful. The court properly adjudged the mill to belong to appellee; and as appellants had caused it to be taken from his possession, without right, it was proper to render the alternative judgment for the mill if to be had, and if not, for its value. Wherefore the judgment is *affirmed*.

*D. S. Hornshell, for appellants.*
*W. W. Cleary, for appellee.*